UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| PERLE O'DANIEL, | ) | CIV.  05-5089-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING NAU'S |
| vs. | ) | MOTION FOR SUMMARY |
| | ) | JUDGMENT AND DENYING |
| NAU COUNTRY INSURANCE CO., | ) | STROUD AND ROOSA'S |
| STROUD NA, and | ) | MOTION FOR SUMMARY |
| JUDY ROOSA, | ) | JUDGMENT |
| | ) | |
| Defendants. | ) | |

Defendants NAU Country Insurance Company, Stroud NA, and Judy
Roosa move for summary judgment.  Plaintiff, Perle O'Daniel, opposes the
motions.  NAU's motion for summary judgment is granted.  Stroud and
Roosa's motion for summary judgment is denied.

**FACTUAL BACKGROUND**

In 1997, NAU Country Insurance Company (NAU) entered into a
contract with Stroud NA (Stroud) which provided that Stroud would sell and
administer a farm owner's insurance program on behalf of NAU.  NAU SMF,
Docket 72 at ¶ 1; O'Daniel SMF, Docket 78 at ¶ 1.  Under the contract,
Stroud was responsible for recruiting, training, managing, and supervising
all its agents, including local agents related to NAU programs.  NAU/Stroud
Agreement, Docket 73-8 at ¶ 6.  Stroud was required to report all
appointments, removals, and changes of local agents to NAU and NAU

retained the right to decline or approve the appointment or continuation of the appointment of any such local agent.  Id. at ¶ 5.  The contract provided that "[a]ll employees and agents of [Stroud], including local agents appointed by [Stroud], shall be [Stroud's] employees or agents, as the case may be, and shall not be deemed employees of [NAU] for any reason whatsoever."  Id. at ¶ 13.

Stroud hired Judy Roosa to broker and procure insurance policies. Roosa solicited and received proposals for insurance and collected premiums if a policy was issued.  Roosa, however, did not investigate losses or make coverage determinations.  She also lacked authority to bind insurers to coverage.  Additionally, Roosa brokered and procured insurance policies for companies other than Stroud.  NAU SMF, Docket 72 at ¶ 4; O'Daniel SMF, Docket 78 at ¶ 4.  The parties dispute whether Roosa was the agent of the insured, O'Daniel, or whether Roosa was the agent of the insurer, NAU and/or its general agent Stroud.  Id. at ¶ 5.

Prior to November 2001, Roosa had been procuring insurance coverage on behalf of O'Daniel for at least eight years.  Generally, O'Daniel would describe the coverage he needed and Roosa would work on his behalf to obtain it.  Over the years, Roosa had placed coverage on O'Daniel's property with several different companies.  NAU SMF, Docket 72 at ¶ 4; O'Daniel SMF, Docket 78 at ¶ 4.

2

During the fall of 2001, O'Daniel determined that he needed to switch coverage due to prior losses and increased premium charges. He asked Roosa to find replacement coverage. Id. at ¶ 6. O'Daniel did not express a preference for obtaining insurance through NAU as opposed to other insurance companies with whom Roosa did business. Id. at ¶ 8. When he asked Roosa to obtain replacement coverage, O'Daniel told Roosa that he had sold most of his ranch and many of his cattle would be located elsewhere. He also told her that he needed "proper" or "good" coverage on the cattle. Stroud/Roosa SMF, Docket 68 at ¶ 3; O'Daniel SMF, Docket 76 at ¶ 3.

The parties agree that O'Daniel trusted Roosa and ultimately accepted her recommendation to submit an application to Stroud. Id. at ¶ 7. The parties further agree that Roosa never told O'Daniel that "she could obtain theft insurance for his cattle in third party arrangements that would guarantee coverage under any and all circumstances." Id. at ¶ 4. But O'Daniel alleges that he told Roosa that he wanted an insurance policy that would cover theft of his cattle located in feeding and pasture arrangements and that she represented to him that he had theft insurance from NAU on his cattle located off his premises in feeder and pasture arrangements. O'Daniel SMF, Docket 76 at ¶¶ 3-4. Thus, the parties dispute whether O'Daniel told Roosa that he wanted theft insurance to cover

his cattle located in feeder and pasture arrangements.  Further, the parties dispute whether Roosa represented to O'Daniel that he had theft insurance from NAU on his cattle located off his premises in feeder and pasture arrangements.  NAU SMF, Docket 72 at ¶ 14; O'Daniel SMF, Docket 78 at ¶ 14.

Roosa obtained cattle theft coverage for O'Daniel from NAU. Stroud/Roosa SMF, Docket 68 at ¶ 12; O'Daniel SMF, Docket 76 at ¶ 12.  A policy of insurance, underwritten by Stroud, was issued to O'Daniel from NAU.  This policy included theft coverage but excluded recovery under circumstances of "wrongful conversion and/or embezzlement."  Id. at ¶ 12. In September 2002, O'Daniel discovered that a large number of his cattle were missing from Midwest Feeders.  NAU denied O'Daniel's claim for the loss under the policy's conversion exclusion and the Eighth Circuit ruled that the denial was proper.  Id. at ¶ 14.

O'Daniel asserts that defendants NAU, Stroud, and Roosa committed fraud and deceit because they misrepresented to him that he had insurance coverage for theft of his cattle, which were being kept in feeder arrangements with third parties.  O'Daniel also asserts that he requested cattle theft coverage for his cattle while at third-party feeding arrangements and defendants NAU, Stroud, and Roosa negligently misrepresented to him that he had such coverage when in fact he did not.  O'Daniel further asserts

4

that defendants knew or should have known that he requested and needed coverage for the theft of his cattle placed in feeder arrangements with third parties and that such insurance was not procured for him and, therefore, defendants negligently procured his insurance. O'Daniel alleges as a result of defendants' actions, he suffered a loss due to his stolen cattle in the amount of $419,450 as well as other consequential damages, including loss of calf crops.

### STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and

5

that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

## DISCUSSION

### I.  Roosa's Motion for Summary Judgment

#### A.  Fraud and Deceit

Roosa argues that she is entitled to summary judgment on the claim of fraud and deceit because she never told O'Daniel that he would have theft coverage under all circumstances.  As a result, Roosa claims that there is no evidence that she made a misrepresentation to O'Daniel.  O'Daniel alleges that Roosa told him that his cattle would be covered for any theft of the cattle, even though they were not located on his land when the theft occurred.  The parties dispute whether Roosa made such a statement to O'Daniel concerning the insurance coverage of his cattle.

The South Dakota Supreme Court has determined that the elements of deceit include "[a] representation made as a statement of fact, which is untrue and intentionally or recklessly made (1) With intent to deceive for the purpose of inducing the other party to act upon it; (2) Reliance upon the untrue statement of fact; and (3) Resulting in injury or damage." Guthmiller v. Deloitte & Touche, LLP, 699 N.W.2d 493, 498 (S.D. 2005).  In general, questions of fraud and deceit are questions of fact determined by the jury. See Railsback v. Mid-Century Ins. Co., 680 N.W.2d 652, 655 (S.D. 2004).

In this case, there is a genuine issue of material fact as to whether Roosa misrepresented the coverage of the insurance policy to O'Daniel and, therefore, summary judgment is not proper.  O'Daniel agrees that Roosa never told him that she could obtain theft insurance for him that would guarantee coverage under any and all circumstances; however, he asserts that she did represent to him that he had theft insurance on his cattle located off his premises in feeder and pasture arrangements.  Roosa argues that this statement that O'Daniel alleges she made to him is true because the policy issued to him did in fact "cover physical loss due to theft" and, therefore, the statement was not a misrepresentation.  While it is true the policy covered theft, it specifically excluded coverage when the loss occurred by wrongful conversion or embezzlement.  "[T]he term 'theft' may, under some circumstances, include conversion . . . ." O'Daniel v. NAU Country

7

Ins., 427 F.3d 1058, 1060 (8th Cir. 2005).  Thus, Roosa's alleged statement

which references theft in conjunction with feeder and pasture arrangements

could include conversion of cattle.[1]

In addition, O'Daniel alleges he never received a copy of the policy

and, as a result, was never informed about the express exclusions of the

policy.  Therefore, O'Daniel argues he had no knowledge about the

conversion and embezzlement exclusions within the theft coverage of the

policy and a fact finder could find that his reliance on the statements made

by Roosa was justifiable.  Because of the conflicting claims of the parties,

the court finds that reasonable minds could differ as to whether Roosa

made such a misrepresentation of the insurance policy coverage to O'Daniel.

Accordingly, Roosa's motion for summary judgment as to the fraud and

deceit claim is denied.

**B.  Negligent Misrepresentation**

Roosa argues that there was no misrepresentation made to O'Daniel

and, thus, summary judgment should be granted in her favor on the

negligent misrepresentation claim.  O'Daniel responds that Roosa did make

a misrepresentation to him regarding the coverage of his insurance policy.

---

[1] The court notes Roosa's alleged statement is different from the language of the insurance policy.  While the Eighth Circuit pointed out that O'Daniel's policy provided coverage for livestock located on land leased or rented by him, Roosa's statement refers to feeder and pasture arrangements, which implies a third party assuming control over his cattle.

The elements of a negligent misrepresentation claim are: (1) the defendant supplied false information to the plaintiff; (2) the defendant supplied the information during the course of a transaction in which the defendant had a financial interest; (3) the defendant was negligent in obtaining or communicating the information; (4) the defendant supplied the information intending or knowing that the plaintiff would rely on the information; and (5) the plaintiff acted reasonably in detrimentally relying on the information. Bayer v. PAL Newcomb Partners, 643 N.W.2d 409, 412 (S.D. 2002).

As explained above, there is a genuine issue of material fact as to whether Roosa made a misrepresentation to O'Daniel with regard to his cattle insurance coverage. O'Daniel claims that Roosa represented to him that he had theft coverage for his cattle located off of his land in feeder and pasture arrangements. Thus, Roosa's motion for summary judgment on the negligent misrepresentation claim is denied.

### C.  Negligent Procurement

Roosa argues that she is entitled to summary judgment on O'Daniel's negligent procurement claim because she had no duty to inform O'Daniel about the exclusions in the policy, she did not breach her duty to procure the insurance O'Daniel requested, and her alleged breach of that duty was not the cause of O'Daniel's damages. Specifically, Roosa alleges that she

owed no duty to O'Daniel to explain the presence of an exclusion in the insurance policy because there was no special relationship between O'Daniel and herself.  Further, she alleges that her duty as an insurance agent is to procure insurance consistent with the insured's request, that O'Daniel asked her to procure "good" coverage for his cattle, and that there is no evidence to suggest that she failed to obtain the best coverage available for O'Daniel.  Also, Roosa contends O'Daniel has failed to prove proximate cause and damages because he did not know if there was coverage available in 2001 that would have insured his loss.

O'Daniel argues that there is a genuine issue of material fact as to whether Roosa breached her duty in procuring the proper insurance. O'Daniel asserts that he told Roosa that he needed insurance coverage for theft of his cattle off his premises in feeder arrangements, but Roosa did not provide such a policy.  O'Daniel maintains that Roosa is liable because she led him to believe that he had insurance coverage when in fact he did not. O'Daniel asserts that he had no information that would notify him that there was an exclusion in the policy that might adversely affect him due to defendants' failure to provide him with the policy.  Furthermore, O'Daniel asserts that his insurance coverage with Commercial Union Insurance Company from 1997 through 1998 provided blanket livestock coverage and did not contain exclusions like the NAU livestock policy.

10

The essential elements of negligence that a plaintiff must prove are that the defendant had a duty, that the defendant breached that duty, and that the breach caused the plaintiff's injury.  See Bordeaux v. Shannon County Sch., 707 N.W.2d 123, 127 (S.D. 2005).  An insurance agent has a duty to "procure insurance of the kind and with the provisions specified by the insured" and is liable to the insured for damages caused by breach of this duty.  Rumpza v. Larsen, 551 N.W.2d 810, 813 (S.D. 1996) (citation omitted).

Based on the principles the South Dakota Supreme Court set forth in Rumpza, this court predicts the South Dakota Supreme Court would follow the numerous courts that have determined that if an insurance agent is unable to procure insurance coverage according to the client's instructions, the agent has a duty to notify the client of her failure to do so.  See deMarlor v. Foley Carter Ins. Co., 386 So. 2d 22 (Fla. App. 1980) (an insurance agent may be liable for damages if he fails to inform his client that requested insurance has not been procured); Wheaton Nat'l Bank v. Dudek, 376 N.E.2d 633 (Ill. App. 1978) (an insurance agent has a duty to provide client with requested insurance coverage or notify client of inability to secure insurance); Steward v. City of Mt. Vernon, 497 N.E.2d 939 (Ind. App. 1986) (when attempting to procure insurance, there is an implied duty to notify an applicant if the agent is unable to obtain insurance); Patterson Agency, Inc.

11

v. Turner, 372 A.2d 258 (Md. App. 1977) (when an insurance agent fails to procure insurance, he must notify his client of the unavailability of requested insurance); Barnes v. Metro. Life Ins. Co., 612 S.W.2d 786 (Mo. App. 1981) (if the insurance agent is unable to obtain the requested insurance, he has a duty to notify his client); Keddie v. Beneficial Ins. Co., 580 P.2d 955 (Nev. 1978) (an insurance agent has a duty to notify a client if he is unable to procure the requested insurance); Sanchez v. Martinez, 653 P.2d 897 (N.M. App. 1982) (an insurance agent must notify his client when he is unable to obtain the insurance requested by the client); Zuniga v. Allstate Ins. Co., 693 S.W.2d 735 (Tex. App. 1985) (generally an insurance agent has a duty to inform his client if he cannot obtain the requested insurance). In this case, Roosa had a duty to procure insurance coverage according to O'Daniel's instructions or notify O'Daniel of her failure to do so. Whether Roosa in fact breached this duty is a question of fact for the fact finder.

Where the defendant is alleged to have breached a duty to notify the client of a failure to obtain coverage or to have mislead the client to incorrectly believing that coverage had been obtained, causation may be proven by showing that if the client had been properly informed, coverage could have been obtained elsewhere or that the client could have avoided or reduced the risk. See Bell v. O'Leary, 744 F.2d 1370 (8th Cir. 1984)

(determining that under Missouri law, an insurance broker's failure to notify the plaintiff of a failure to procure flood insurance was a cause of losses sustained when a flood occurred while the plaintiffs were without coverage, because the defendant's negligence foreclosed the plaintiffs' opportunity to consider other options); Gulf-Tex Brokerage Inc. v. McDade & Assocs., 433 F. Supp. 1015 (S.D. Tex. 1997) (determining that under Texas law, an insurance agent was liable for not notifying the client of failure to obtain water navigational extension for a shrimp trawler, where the trawler could have been kept in home waters or recalled if client has been properly informed); and Boothe v. American Assurance Co., 327 So. 2d 477 (La. App. 1976) (determining that under Louisiana law, the failure of the insurance agent to notify the clients of inability to obtain flood insurance was the cause of loss where clients could have avoided or reduced the risk of flood losses by selling the property, raising the foundation, or removing major furnishings).  In this case, if O'Daniel had known that Roosa was unable to procure the insurance he requested, there were a variety of options available to him which would have allowed him to protect himself from the potential harm that occurred.  Accordingly, Roosa's motion for summary judgment in relation to O'Daniel's negligent procurement claim is denied because whether Roosa breached her duty is a question for the fact finder.

13

**II.    Stroud's Motion for Summary Judgment**

**A.  Applicable Law**

Both parties argue that their claims are meritorious under both South

Dakota and New Mexico law.[2]  In diversity cases, federal courts apply the

choice of law rules of the forum state to determine which state's substantive

law applies.  Retail Assocs., Inc. v. Macy's East, Inc., 245 F.3d 694, 697 (8th

Cir. 2001).  Under South Dakota's choice of law rules, the Restatement

(Second) of Conflict of Laws is applied to resolve questions regarding which

state's laws govern in a particular factual situation.  Stockmen's Livestock

Exch. v. Thompson, 520 N.W.2d 255, 257 (S.D. 1994).  The Restatement

states: "When certain contacts are located in two or more states with

identical local law rules on the issue in question, the case will be treated for

choice-of-law purposes as if the contacts were grouped in a single state."

Restatement (Second) of Conflicts of Law § 291, cmt. h (1971).  In other

words, if the law in the two states is the same in the sense that the same

result would be reached regardless of what law is applied, one state law will

apply.  In this case, the result is the same under either South Dakota or

New Mexico law.

---

[2]Stroud argues that New Mexico law applies to determine the agency
relationship between Stroud and Roosa because the contract signed by both
parties states, "This Agreement and any revisions hereto shall be governed by
and construed in accordance with the laws of the State of New Mexico . . . ."
Stroud/Roosa Agreement, Docket 73-7 at Section XII.

Stroud argues that it is entitled to summary judgment on O'Daniel's claims because Roosa was not an agent of Stroud and, therefore, her actions cannot be imputed to it.  Rather, Stroud alleges that Roosa was an agent acting on behalf of O'Daniel when she obtained insurance for him.  O'Daniel argues Stroud's summary judgment motion is premature because he needs to take the deposition of Roosa, Alan Miller, and Stroud to determine the nature of their agency relationship.

The issue before the court is whether Stroud is liable for Roosa's alleged fraud and deceit, negligent misrepresentation, and negligent procurement.[3]  Whether an agency relationship has in fact been created depends upon the relations of the parties as they exist under their agreement or acts.  Kasselder v. Kapperman, 316 N.W.2d 628, 630 (S.D. 1982).  See also Brown v. Cooley, 247 P.2d 868 (N.M. 1952) (stating agency is determined from all of the facts and circumstances of the transaction as well as the conduct and communications between the parties).  The evidence presented to the court indicates that Roosa acted as O'Daniel's insurance agent for approximately eight years and obtained insurance for him from several different companies during this time.  Stroud contracted to

---

[3] It is undisputed that O'Daniel did not have any contact and never communicated with Stroud during 2001 when he contacted Roosa to procure insurance for him.  As such, O'Daniel's claims against Stroud are based solely upon the theory that Roosa was an agent of Stroud and, therefore, Stroud is liable for Roosa's alleged actions.

sell and administer farm insurance policies issued by NAU and maintained all communications with agents like Roosa.  Roosa also procured and brokered insurance policies from other companies in addition to Stroud. Further, the agreement between Roosa and Stroud states "[Roosa] is an independent contractor and not an employee of [Stroud]."  Roosa/Stroud Agreement, Docket 73-7 at Section XI(C).

An actual agency relationship exists if the relationship is expressly created by an agreement between the parties. Dahl v. Sittner, 429 N.W.2d 458 (S.D. 1988).  See also Maes v. Audubon Indemnity Ins. Group, 164 P.3d 934 (N.M. 2007) (finding that an agreement between parties that provided that one party was to be paid to service policies underwritten by the other party did not illustrate control necessary to constitute an agency relationship).  Here, there is no evidence of an express agreement between the parties to create an actual agency relationship.

Ostensible agency exists where the law implies an agency relationship because the principal affirmatively, intentionally, or by lack of ordinary care causes a third party to believe another is serving as his agent.  Kasselder, 316 N.W.2d at 630.  See also Houghland v. Grant, 891 P.2d 563 (N.M. 1995) (stating there was a material dispute issue as to whether one party through what it represented or failed to represent to the public created the impression that another party was its agent).  Stroud argues that in his

16

deposition, O'Daniel stated that Roosa was an independent agent in the transaction.  The deposition transcript, however, reveals O'Daniel never explicitly stated that Roosa was an independent agent, but rather stated that he was aware of the fact that Roosa was not simply writing insurance policies on behalf of one company.  This does not necessarily establish that Roosa did not have an ostensible agency relationship with Stroud.  Further, no evidence was presented regarding representations made to O'Daniel about Stroud's relationship with Roosa.  In other words, the court cannot determine whether Stroud affirmatively, intentionally, or negligently caused O'Daniel to believe Roosa was serving as its agent based on the evidence that has been presented.  Accordingly, Stroud's motion for summary judgment is denied because there are genuine issues of material fact regarding the potential ostensible agency relationship between Stroud and Roosa.

**III.   NAU's Motion for Summary Judgment**

   **A.  Applicable Law**

Both parties argue that their claims are successful under both South Dakota and Minnesota law.[4]  As noted above, the court will apply South

---

[4] NAU argues that Minnesota law applies to both contract interpretation and substantive agency issues because the agency agreement between Stroud and NAU provided that the agreement was issued "under, is subject to and shall be interpreted in accordance with the laws of the State of Minnesota . . . ." NAU/Stroud Agreement, Docket 73-8 at ¶ 20.

Dakota's choice of law rules to determine which state's substantive law applies. Additionally, as noted above, if the law in the two states reaches the same result, one state law will apply. The court notes that in this case, the result will be the same under both South Dakota and Minnesota law.

### B. Fraud/Deceit; Negligent Misrepresentation; Negligent Procurement

NAU argues it is entitled to summary judgment on the claims of fraud and deceit, negligent misrepresentation, and negligent procurement. NAU alleges that under both South Dakota and Minnesota law, Roosa was not an agent of NAU and, therefore, cannot be held liable for her actions. More specifically, NAU argues that Roosa was not NAU's agent for the purpose of selecting the appropriate insurance company and the appropriate coverage terms, but rather she was O'Daniel's agent for these purposes. O'Daniel alleges that Roosa was employed by Stroud as an agent of Stroud and Stroud had a contract with NAU. Further, O'Daniel argues that Roosa had apparent authority to act on behalf of NAU which would make NAU liable for Roosa's acts. Finally, O'Daniel contends that whether Roosa is an agent for NAU or O'Daniel is a question of fact for the jury.

The issue before the court is whether NAU is liable for Roosa's alleged fraud and deceit, negligent misrepresentation, and negligent procurement.[5]

---

[5] It is undisputed that O'Daniel did not communicate directly with NAU regarding acquiring insurance in November 2001. As such, O'Daniel's claims

As such, the court must determine whether Roosa was acting as NAU's agent at the time of her alleged acts and omissions.  "[W]hether an insurance broker is the agent of the insurer or of the insured depends on the facts of the particular case."  North Star Mut. Ins. Co. v. Rasmussen, 734 N.W.2d 352, 363 (S.D. 2007).  As a result, a fact finder would generally determine whether a person is an agent.  But this case is very similar to North Star, in which the South Dakota Supreme Court determined that the insurance broker was not an agent of the insurance company as a matter of law because the relevant facts were not in dispute.

In North Star, Mary Henkel, an insurance agent, was employed by the Puthoff Insurance Agency (Puthoff).  Puthoff and North Star Mutual Insurance Company (North Star) entered into an Agency Agreement which provided that Puthoff and its agents could solicit and negotiate insurance on behalf of North Star.  Rasmussen, the insured, purchased a boat and asked Henkel to acquire insurance coverage on it.  Henkel had acquired insurance for Rasmussen numerous times in the past.  Generally, Rasmussen would inform Henkel of the property he wanted insured and Henkel would decide what kind of insurance to obtain and the company with which to place the insurance.  North Star, 734 N.W.2d at 354-55.

---

against NAU are based upon the theory that Roosa was an agent of NAU and, therefore, NAU is liable for Roosa's alleged actions.

Henkel obtained coverage for Rasmussen from numerous companies. Henkel had the authority to solicit customers for North Star; however, she did not have the authority to bind North Star to a policy.  Rather, she submitted an application on behalf of potential insureds.  Rasmussen paid the premiums on his policies to North Star and North Star would make commission payments to Puthoff, which would, in turn, pay Henkel.  Id. at 355.  Based on these undisputed facts, the South Dakota Supreme Court determined that as a matter of law, Henkel was Rasmusen's agent for purposes of procuring insurance and any negligence in doing so was not imputed to North Star.  Id. at 363.

Like in North Star, in this case Roosa was not an exclusive agent for NAU and the parties do not dispute that she solicited policies of insurance from several other insurance companies.  In fact, Roosa had obtained an insurance policy from Commercial Federal for O'Daniel and, therefore, O'Daniel was aware that Roosa worked for numerous insurance companies. Moreover, like in North Star, O'Daniel did not tell Roosa to obtain an insurance policy from NAU but instead merely contacted Roosa and explained what type of coverage he needed and requested her to procure such insurance.  Further, as in North Star, O'Daniel relied upon Roosa as his agent to examine different options of coverage, negotiate with various insurance companies, find the best policy, and procure insurance.  Roosa

20

was not restricted to offer an NAU policy at any time but could have acquired the insurance through any number of insurance companies.

Additionally, similar to <u>North Star</u>, Roosa did not have actual authority to bind NAU to a policy because the contract between NAU and Stroud specifically states that "[l]ocal agents shall not be granted binding authority with respect to business covered by [the] contract." NAU/Stroud Agreement, Docket 73-8 at ¶ 5. Also, the contract stated that any employees or agents of Stroud were not employees of NAU. <u>Id.</u> at ¶ 13. Further, Roosa did not have ostensible authority because O'Daniel knew that Roosa did not work solely for NAU but instead worked for numerous insurance companies. In fact, it is undisputed that O'Daniel was not aware that NAU existed in November 2001 when Roosa procured insurance for him. Accordingly, based on these undisputed facts, Roosa was not an agent of NAU and, as such, none of Roosa's actions are imputed to NAU.[6] Thus, NAU's motion for summary judgment is granted.

Accordingly, it is hereby

---

[6] Similarly, under Minnesota law, the question as to whether an individual is an agent of an insurance company is a question of fact. To determine this, courts in Minnesota apply a seven-factor test. The court notes that under this seven-factor test, Roosa would be considered as a broker under the undisputed facts of this case, meaning that Roosa would be independently liable for her own actions. <u>See</u> <u>Frank v. Winter</u>, 528 N.W.2d 910, 914-15 (Minn. App. 1995).

ORDERED that Stroud and Roosa's motion for summary judgment (Docket 66) is denied.

IT IS FURTHER ORDERED that NAU's motion for summary judgment (Docket 70) is granted.  Thus, NAU's motion to strike Steve Satterlee (Docket 70) as a witness is denied as moot.

Dated December 21, 2007.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

22