UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| PERLE O'DANIEL, | ) | CIV.  05-5089-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER DENYING |
| vs. | ) | PLAINTIFF'S MOTION TO |
| | ) | RECONSIDER DISMISSAL OF |
| STROUD NA, and | ) | DEFENDANT NAU COUNTRY |
| JUDY ROOSA, | ) | INSURANCE COMPANY |
| | ) | |
| Defendants. | ) | |

Plaintiff, Perle O'Daniel, moves the court to reconsider dismissal of defendant NAU Country Insurance Company (NAU) pursuant to Federal Rule of Civil Procedure 60(b)(2) and (6).  Defendant, NAU, opposes the motion.  The motion is denied.

## FACTUAL BACKGROUND

On August 8, 2006, O'Daniel filed an amended complaint in this case against NAU, Stroud NA (Stroud), and Judy Roosa, alleging fraud, negligent misrepresentation, and negligent procurement.  Docket 41.  Almost one year later, on June 29, 2007, Stroud and Roosa both moved for summary judgment.  Docket 66.  The court denied the motion because genuine issues of material fact existed as to whether Roosa engaged in the alleged conduct and as to whether Roosa was an agent of Stroud, thereby making Stroud

liable for her alleged conduct.  Docket 82.[1]  NAU also moved for summary
judgment.  Docket 70.  The court granted the motion, finding that based
upon the undisputed facts of the case, Roosa was not an agent of NAU and,
therefore, NAU could not be held liable for her alleged conduct.  As a result
of the court's ruling, NAU was dismissed as a defendant to this case.
Docket 82.  O'Daniel requests the court to reconsider its prior ruling
granting summary judgment in favor of NAU and dismissing NAU as a
defendant in this case.

## DISCUSSION

Federal Rule of Civil Procedure 60(b) provides that "[o]n motion and
just terms, the court may relieve a party or its legal representative from a
final judgment, order, or proceeding," because of "newly discovered evidence
that, with reasonable diligence, could not have been discovered in time to
move for a new trial under Rule 59(b)," or for "any other reason that justifies
relief."  Fed. R. Civ. P. 60(b)(2) & (6).  Rule 60(b) " 'provides for extraordinary
relief which may be granted only upon an adequate showing of exceptional
circumstances.' "  Sanders v. Clemco Indus., 862 F.2d 161, 169 n.14 (8th Cir.
1988) (citation omitted).  See also United States v. One Parcel of Property

---

[1] More recently, the court granted Stroud and Roosa's motion for
summary judgment in relation to the claim of deceit, but denied the motion
with regard to the negligent misrepresentation and negligent procurement
claims.  Dockt 154.

Located at Tracts 10 & 11 of Lakeview Heights, 51 F.3d 117, 120 (8th Cir.

1995) (stating "[a] district court should grant a Rule 60(b) motion only upon

an adequate showing of exceptional circumstances") and Mitchell v. Shalala,

48 F.3d 1039, 1041 (8th Cir. 1995) (stating "[g]enerally, Rule 60(b) provides

for exceptional relief, which may be granted only upon a showing of

exceptional circumstances").  Although relief under the rule is

"extraordinary," a Rule 60(b) motion is "committed to the sound discretion

of the trial court."  MIF Realty L.P. v. Rochester Assocs, 92 F.3d 752, 755

(8th Cir. 1996).

     "Rule 60(b) is to be given a liberal construction so as to do substantial

justice and to prevent the judgment from becoming a vehicle of injustice."

Id. (internal quotations and citation omitted).  The motion is derived from

equity and exists "to preserve the delicate balance between the sanctity of

final judgments . . . and the incessant command of a court's conscience that

justice be done in light of all the facts."  Id. (internal quotations omitted).

Although Rule 60(b) motions are "disfavored," the Eighth Circuit has also

"recognize[d] that they 'serve a useful, proper and necessary purpose in

maintaining the integrity of the trial process, and a trial court will be

reversed where an abuse of discretion occurs.' "  Id. (citation omitted).  An

abuse of discretion occurs "if the district court rests its conclusion on

clearly erroneous factual findings or if its decision relies on erroneous legal conclusions." Id. (internal quotations and citation omitted).

Nevertheless, Rule 60(b) only "authorizes relief based on certain enumerated circumstances." Broadway v. Norris, 193 F.3d 987, 990 (8th Cir. 1999). Rule 60(b) "is not a vehicle for simple reargument on the merits." Id. Thus, a "motion to reconsider" pursuant to Rule 60(b) is properly denied where the movant "d[oes] nothing more than reargue, somewhat more fully, the merits of their claim." Id. See also Sanders, 862 F.2d at 170 (stating that a Rule 60(b) motion may be denied where it raises only issues of law previously rejected by the court because the failure to present reasons not previously considered by the court "alone is a controlling factor against granting relief").

## I.    Newly Discovered Evidence

Where a Rule 60(b) motion is premised on "newly discovered evidence," the evidence must be "sufficient to justify setting aside the original judgment." Swope v. Siegel-Robert, Inc., 243 F.3d 486, 498 (8th Cir. 2001). Moreover, "Rule 60(b) permits consideration only of facts which were in existence at the time of trial, not opinions, which can be formulated at any time." Id. Therefore, "[i]n order to prevail under Rule 60(b)(2), the movant must show that: (1) the evidence was discovered after trial; (2) due diligence was exercised to discover the evidence; (3) the evidence is material

4

and not merely cumulative or impeaching; and (4) the evidence is such that a new trial would probably produce a different result." <u>Schwieger v. Farm Bureau Ins. Co. of Nebraska</u>, 207 F.3d 480, 487 (8th Cir. 2000).

**A.    Relationship Between NAU and Roosa**

**1.    Application Forms**

O'Daniel asserts that Roosa presented him with insurance application forms to complete and that the name of NAU appeared on these forms. Based upon the identification of NAU on the application forms, O'Daniel argues that Roosa was an agent of NAU.  The application forms, however, are not newly discovered evidence.  Rather, O'Daniel relied on such facts in his brief in opposition to NAU's motion for summary judgment, where he argued that the fact that the names of NAU and Stroud appeared on the application forms established that Roosa had apparent authority to act on behalf of NAU, which would make NAU liable for Roosa's acts and omissions.  Docket 79 at 4-5.  Accordingly, such evidence was not discovered after the court's summary judgment order.

But even if the evidence was newly discovered, this evidence would not produce a different result.  The court has already considered this evidence and finds that it does not establish an ostensible or apparent agency relationship between NAU and Roosa.  "Ostensible [or apparent] agency exists where the law implies an agency relationship because the

principal affirmatively, intentionally, or by lack of ordinary care causes a third party to believe another is serving as his agent." <u>Dahl v. Sittner</u>, 429 N.W.2d 458, 462 (S.D. 1988).  Significantly, here, O'Daniel could not have reasonably believed that Roosa was an agent of NAU because O'Daniel knew Roosa did not work for one particular insurance company based on their prior business dealings.  Specifically, O'Daniel stated that over their eight- to nine-year business relationship, Roosa set him up with about two or three different insurance companies and that he was aware of the fact that she was not writing on behalf of one insurance company.  Docket 73-3 at 3. Further, O'Daniel explained that he would tell Roosa what coverage he needed and she would go out and try to find a policy that would meet those needs.  <u>Id.</u> at 5-6.  O'Daniel's statements about his relationship with Roosa demonstrate that he knew that she did not act as an agent for one particular insurance company, in this instance NAU, and, as a result, O'Daniel could not have reasonably believed that Roosa was an agent of NAU.  Thus, the identification of NAU on the application forms is not sufficient evidence from which to find that O'Daniel believed Roosa was an agent of NAU.

### 2.    Insurance Declarations

O'Daniel argues that the fact that each insurance declaration page was signed by NAU President Gregory Deal and NAU Secretary Pamela Deal and countersigned by "Authorized Representative" Roosa demonstrates that Roosa had apparent authority to bind NAU.  More specifically, O'Daniel argues that the policy declarations letterhead, which included "NAU Companies, NAU Country Insurance, Stroud GA, Serviced by Stroud GA," coupled with Roosa's identification as an "Authorized Representative," is sufficient to make Roosa an ostensible agent of NAU.

While the fact the insurance declarations included the signatures of NAU President and Secretary and Roosa was not specifically presented to the court in the parties' summary judgment motions, O'Daniel did mention that he received NAU's declaration of insurance that showed cattle coverage but did not show any exclusions.  See Docket 77 at 8.  Therefore, the insurance declarations were not discovered after the court ruled on the defendants' summary judgment motions.  Even if such evidence was discovered after the court's ruling, the court finds that such evidence does not meet the rigorous four-factor test of "newly discovered" evidence.  As discussed above, based upon O'Daniel's understanding that Roosa did not work for one particular insurance company, he could not have reasonably

believed that Roosa was an agent of NAU and, thus, such evidence does not demonstrate that Roosa was an ostensible agent of NAU.

### 3.   Payment Arrangement

O'Daniel argues that the payment arrangement among NAU, Stroud, and Roosa indicates that Roosa was an agent of NAU.  O'Daniel asserts that under the payment arrangement, Stroud collected the premium payments from O'Daniel and deposited the payments in a trust account, which was administered by NAU.  Premiums paid to Stroud and deposited in the trust account could only be removed by NAU.  NAU paid Stroud and Stroud paid commissions to agents, including Roosa.  Stroud received 22 percent of the premium payments as commission, and it paid Roosa paid 15 percent of its percentage, while NAU kept 78 percent of premium payments.

Evidence of the payment arrangement among the parties was not presented to the court in the parties' summary judgment motions and the court assumes that such evidence was discovered after the court ruled on defendants' summary judgment motions.[2]  But even if due diligence was exercised to discover the evidence and the evidence is material, such evidence does not warrant a different result.

―――――――――――――

[2] The court assumes that this evidence was discovered after it ruled on defendants' summary judgment motions because in his brief in support of his motion to reconsider, O'Daniel represents that this fact is attributed to depositions taken of Allen Miller, Steve Stroud, and Roosa in 2008.  See Docket 128 at 8, 11.  The court issued its original opinion in 2007.  Docket 82.

O'Daniel contends that Roosa is an agent for the insurer because SDCL 58-30-142, which was the statute in effect at the time Roosa procured insurance for O'Daniel in 2001, controls.  This statute defines an "[a]gent of the insurer" as "any insurance producer who is compensated directly or indirectly by an insurer and sells, solicits, or negotiates any product of that insurer" and an "[a]gent of insured" as "any insurance producer or person who secures compensation from an insured or insurance customer only and receives no compensation directly or indirectly from an insurer for a transaction with that insured or insurance customer."  SDCL 58-30-142(1) & (2).  These definitions are located within the section concerning insurance producers and apply to "[t]erms used in §§ 58-30-141 to 58-30-195, inclusive."  Id.

While it is likely Roosa would be considered an agent of NAU under the definitions of the statute, the South Dakota Supreme Court has found that "[s]tatutes regulating licensing and defining agents, brokers and solicitors, are not intended to change or to exclude the general laws of agency."  North Star Mut. Ins. Co. v. Rasmussen, 734 N.W.2d 352, 361 (S.D. 2007) (internal quotations and citation omitted).  Further, as recognized by the South Dakota Supreme Court,

> [b]y the statute's own limitation, definitions supplied in SDCL 58-30-142 apply to 'terms used in §§ 58-30-141 to 58-30-195, inclusive.'  This restricting language implies that the definitions provided were not to be construed to replace general laws of

9

agency.  Thus, definitions in the code should not, by
themselves, resolve the agency question.

Id.

Pursuant to the general principles of agency law, an agency
relationship is either actual or ostensible.  "Actual agency exists if the
relationship is expressly created by an agreement whereby the principal
appoints his agent who agrees to serve in that capacity."  Dahl, 429 N.W.2d
at 463.  In contrast, ostensible agency, sometimes referred to as apparent
agency, exists where the law implies an agency relationship because the
principal causes a third party to think another is his agent.  Id.  Here, the
parties have not produced an express agreement between NAU and Roosa in
which NAU appointed Roosa and Roosa agreed to serve as an agent for NAU.
Thus, there is no actual agency relationship between NAU and Roosa.
Likewise, there is no ostensible or apparent agency relationship between
NAU and Roosa.  O'Daniel was not aware of the payment arrangement when
he was dealing with Roosa in 2001 because he did not discover such
information until 2008 and, therefore, the payment arrangement did not
cause him to think Roosa was an agent of NAU.  Even if he did know about
the payment arrangement in 2001, other facts, particularly his past
business dealings with Roosa, indicate that it was not reasonable for him to
believe that Roosa was an agent of NAU.  Accordingly, Roosa was not the
ostensible agent of NAU.  In summary, considering the statutory definitions

10

and the general principles of agency law, the court finds that the payment arrangement among the parties is not sufficient to make Roosa an ostensible agent of NAU.

### 4.    Availability of Insurance Companies to Roosa in 2001

O' Daniel argues that Roosa was an agent of NAU because when he made his application for insurance through Roosa in 2001, NAU was the only insurance company available to her for his requested farm and ranch insurance policy.  O'Daniel further emphasizes that prior to placing his insurance with NAU, Roosa placed his insurance with Commercial Union through NAU.

Evidence regarding the availability of insurance companies to Roosa in 2001 in relation to O'Daniel's requested farm and ranch insurance was not presented to the court in the parties' summary judgment motions. Thus, the court will assume that it is evidence that was discovered after the court ruled on the defendants' motions for summary judgment.[3] Nonetheless, under the particular facts of this case, the court finds that such evidence does not constitute "newly discovered" evidence because this evidence does not produce a different result.

-----

[3] The court assumes that this evidence was discovered after it ruled on defendants' summary judgment motions because in his brief in support of his motion to reconsider, O'Daniel represents that this fact is attributed to a deposition taken of Roosa in 2008.  See Docket 128 at 8.  The court issued its original opinion in 2007.  Docket 82.

Here, Roosa testified that prior to procuring insurance for O'Daniel from NAU in 2001, she worked through NAU to obtain insurance from Commercial Union for O'Daniel. She believes that NAU was the general agent for Commercial Union. At that time, she was an agent working directly with O'Daniel and she went through NAU to obtain the policy from Commercial Union. Docket 133-18 at 1. Roosa further testified that in 2001, when O'Daniel asked her to obtain coverage for him, NAU was the only company available to her for farm and ranch insurance in South Dakota. Roosa described herself as a "captive agent" for Farmers Insurance Group, who is allowed "to write outside business they do not write." Id. at 5-6. She also stated that while she is an agent for Farmers Insurance Group, she has been an agent for other companies from time to time. Id. at 6.

The fact that Roosa could only obtain farm and ranch insurance in South Dakota for O'Daniel through NAU in 2001 does not, by itself, establish that Roosa was an agent of NAU. As discussed above, there was no actual agency relationship between Roosa and NAU because no evidence of an express agreement between Roosa and NAU to that effect has been submitted. Similarly, there was no ostensible or apparent agency relationship between Roosa and NAU. No evidence has been presented showing that O'Daniel knew that Roosa could only procure his requested

12

farm and ranch insurance through NAU and, therefore, it is likely this was unknown to O'Daniel in 2001 when he asked Roosa to find insurance for him, particularly in light of the fact that O'Daniel submits that he discovered this evidence in 2008.  As a result, such information could not have caused O'Daniel to think Roosa was an agent of NAU.  But in the event O'Daniel had knowledge of such information in 2001, other facts, specifically his past business dealings with Roosa, demonstrate that it was not reasonable for him to believe that Roosa was an agent of NAU.  O'Daniel was aware that over their eight- to nine-year business relationship, Roosa had procured insurance for him from two to three different insurance companies and, thus, he knew that Roosa did not work for one specific insurance company.  See Docket 73-3 at 3.  The court finds the undisputed facts show that Roosa was O'Daniel's agent for the purpose of procuring insurance and they do not support a finding that Roosa was an actual or ostensible agent of NAU.

**B.      Relationship Between NAU and Stroud**

**1.      Stroud's Authority to Bind NAU**

O'Daniel argues that Stroud was an agent of NAU because Stroud had the authority to issue NAU policies that bound NAU and to settle claims for NAU and, as such, NAU is a proper defendant in this case.  The fact that Stroud had authority to perform certain tasks for NAU was not uncovered or

13

exposed after the court's order on defendants' motions for summary
judgment because O'Daniel used the representation that Stroud had the
authority to bind NAU when he urged the court to deny NAU's motion for
summary judgment.  Docket 79 at 2.  Even if the evidence had been
uncovered after the court ruled on defendants' motions for summary
judgment, the court finds that this evidence cannot be considered "newly
discovered" evidence because this evidence does not change the result of
this case.

      Here, it is undisputed that Stroud is a general agent of NAU.  In fact,
the agreement between NAU and Stroud gives Stroud the authority "to
solicit, receive and accept applications or proposals for such contracts of
insurance as Company has authority to make."  Docket 73-8 at 3.
Additionally, Stroud was granted the authority "to countersign (if
appropriate) and issue policies of insurance and endorsements thereto
effecting changes, or transfer existing policies and to effect cancellations of
existing policies."  Id.  Of course, the agreement also contains restrictions
on Stroud's authority to act on behalf of NAU.  See id.  Therefore, the issue
the court must decide is if and to what extent the agency relationship
between Stroud and NAU affects the relationship between Roosa and NAU.
In other words, the court must determine whether NAU can be liable for

Roosa's actions because Stroud is a general agent of NAU and Roosa may be
an agent of Stroud.

The court finds that South Dakota law applies to this analysis.  While
the agreement creating the agency relationship between Stroud and NAU
states that it is "subject to and shall be interpreted in accordance with the
laws of the State of Minnesota by any court of competent jurisdiction," the
relevant inquiry does not concern the relationship between Stroud and NAU
but rather the effect the relationship between these two parties has on the
relationship between Roosa and NAU.  See Docket 73-8 at 12.  Thus, the
court will apply South Dakota law because in a diversity suit, a federal
district court is to apply the substantive law of the state in which it sits.
See Urban Hotel Dev. Co. v. President Dev. Group, L.C., 535 F.3d 874, 877
(8th Cir. 2008).

Under South Dakota law, the fact that Stroud was a general agent of
NAU and Roosa may have been an agent of Stroud does not necessarily
make Roosa an agent of NAU.  Although the South Dakota Supreme Court
has not specifically addressed this issue, its ruling and analysis in North
Star indicate that the relationship between an insurance company and a
general agent does not affect the relationship between an agent of the

15

general agent and the insurance company.[4]  In that case, Mary Henkel, an

insurance agent, worked at Puthoff Insurance Agency (Puthoff).  Puthoff had

an agency agreement with North Star, an insurance company, which gave

Putoff and its agents authority to solicit and negotiate insurance on behalf

of North Star.  North Star, 734 N.W.2d at 354.  In determining whether

Henkel was an agent of North Star for purposes of imputing her negligence

to North Star, the South Dakota Supreme Court focused solely on the

relationship between Henkel and North Star and did not discuss the

relationship between Puthoff and North Star.  Because the court did not

consider the relationship between Puthoff and North Star in its analysis,

such relationship was irrelevant to the question of whether Henkel was an

agent of North Star.  The court, instead, determined that Henkel was not an

agent of North Star based upon Henkel's relationship with North Star.  See

id. at 360-63.

   Likewise, here, in determining whether Roosa was an agent of NAU for

purposes of imputing her negligence to NAU, the court will focus on the

relationship between Roosa and NAU and not on the relationship between

---

[4] The court recognizes that the court in North Star relied upon statutes
that are now repealed.  But the North Star court stated that even if the newly
enacted statutes applied, which are the statutes that apply in this case, such
statutes were not dispositive of the agency issue.  Instead, the definitions are to
be considered along with general laws of agency.  North Star, 734 N.W.2d at
361.

Stroud and NAU.  As discussed above in detail, the evidence surrounding Roosa's relationship with NAU does not indicate that Roosa was an actual or ostensible agent of NAU.  Accordingly, Roosa was not an agent of NAU.

### 2.    Application Forms and Payment Arrangement

O'Daniel also argues that the identification of Stroud and NAU on the insurance application forms and the payment arrangement among Roosa, Stroud, and NAU show that Stroud was an agent of NAU.  As noted above, Stroud is a general agent of NAU; however, that relationship does not make NAU liable for Roosa's actions.  Accordingly, notwithstanding these facts, regardless of whether they are newly discovered, Roosa was not an agent of NAU.

## II.    Any Other Reason That Justifies Relief

O'Daniel further argues that the court should reconsider its previous order granting NAU's motion for summary judgment because there are reasons justifying relief from the operation of that judgment.  O'Daniel argues that the court erroneously relied upon North Star because in that case the court analyzed and applied statutes defining the agent and insurer relationship that were repealed and not in effect in 2001 when Roosa procured insurance for O'Daniel.  Additionally, O'Daniel argues that NAU failed to inform O'Daniel's lender, Fin-Ag, Inc. (Fin-Ag) about the proper scope of insurance coverage.

17

With respect to the court's reliance on <u>North Star</u>, the court explained above that after considering the statutory definitions in effect during the relevant time period and the general principles of agency law, as required by South Dakota law, Roosa is neither an actual or ostensible agent of NAU. There was no express agreement of agency between Roosa and NAU. Further, O'Daniel, based on his business relationship with Roosa and the facts available to him when he was dealing with Roosa in 2001, could not have reasonably believed Roosa was an agent of NAU.  Accordingly, the court's prior reliance on <u>North Star</u> does not justify the extraordinary relief of rejoining NAU as a defendant in this case.

Regarding NAU's failure to properly notify Fin-Ag about O'Daniel's insurance coverage, this is not the appropriate time to raise such an argument and O'Daniel is not the proper party to assert this claim.  In fact, Fin-Ag recently filed a lawsuit against NAU, Stroud, and Roosa, alleging, among other things, breach of contract, bad faith, fraud and misrepresentation, negligent misrepresentation, deceit, and negligent procurement.  <u>See</u> <u>Fin-Ag, Inc. v.  NAU Country Ins.</u>, Civ. 08-4141-LLP, Docket 1.  Thus, Fin-Ag can assert its own arguments and O'Daniel need not make such arguments for Fin-Ag.  As such, this does not create an extraordinary circumstance that warrants the court rejoining NAU as a defendant.

18

Based upon the foregoing, it is hereby

ORDERED that plaintiff's motion to reconsider dismissal of defendant

NAU (Docket 127) is denied.

Dated December 9, 2008.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
CHIEF JUDGE